Good morning, Your Honors. Stephen Lubliner on behalf of Appellant E. Davis Glass, and may it please the Court, I will try to reserve two minutes for rebuttal. I will be addressing all three arguments involving the criminal case this morning, and I will be doing that in reverse order, starting with the argument about victim restitution, the invalid judgment, but with the secret curative understanding not to be enforced. And on that, I think if we can imagine a different horror scenario. Yes. Rather than complicate the issue, why don't you just tell us what you what you think about the restitution? The restitution was invalid under the statute ab initio. All parties, including the court, understood that Wells Fargo had been compensated for the bank fraud that Miss Glass committed when another creditor conducted a foreclosure sale, and the excess proceeds were sufficient to compensate Wells Fargo for the fraud. There's no dispute that the money had been tendered by the trustee to Wells Fargo long before the time of sentencing. The government counsel said, nonetheless, to safeguard Wells Fargo's rights in perpetuity in civil litigation, both contemplated and pending and so on, the court should still enter an order of victim restitution. Well, when you say that Wells Fargo was compensated, Wells Fargo had won at least at one level. They'd gotten some money as a result of this. But Miss Glass hadn't given up her claims against Wells Fargo, and Wells Fargo was not entitled to keep that money. Correct? Well, the government has the burden of. Can you answer my question? Did she give up her claims? She did not, standing there in court, give up the claims, but the reality the court had to address whether there were any valid. Are you willing to stipulate in a way to bind Miss Glass that she has no claim against the funds received by Wells Fargo as a result of the sale of that other property? No, I'm not willing to stipulate that. All right. So she still hasn't claimed. So therefore, the restitution order's out there as a guarantee. Well, the court is not in the position of, as part of a sentence in a criminal case, as part of implementing the victim restitution statute, implementing civil guarantees against future civil litigation, real and imagined. Counsel, I thought the court, Judge Gould, I thought the court was about as explicit as a court could be, saying that there would be no double recovery. So, in other words, if the bank received the money, it wouldn't also get restitution. Well, the court was explicit on the record and full of good intentions, and government counsel, I assume, was full of good intentions, that those good intentions are not reflected in the judgment. We see what happens. We saw it at sentencing, what happens when paperwork goes astray, when computers go astray. We saw what happened with the Wells Fargo computer system that recognized the fraudulent loan as a satisfied loan, kicked out a deed of rescission, reconveyance somewhere in Billings, Montana. The fact that everyone... Couldn't the judgment just be modified to explicitly add in the written judgment, like a sentence that would reflect what the court said at the oral hearing, which normally has precedence if there's a conflict? Well, Your Honor, I'm not sure how the judgment could be modified. The judgment could be... The government could be ordered to file a satisfaction of judgment or whatever the comparable procedure is in federal courts for a victim restitution order. But if you look at the language, let me find it, on page 1125, 1126 of their excerpts of record, the government says, excuse me, and in the course of the years to come if it's confirmed that there's no additional litigation that the defendant is pursuing contesting the right to the money, then the probation officer can declare that restitution order to have been satisfied. Now, we're four years after the fact, and the order still hasn't been declared satisfied, and Ms. Glass is in prison. I spoke, and it's a little outside the record, but I spoke to Ms. Glass's probation officer, and I explained that the money had been paid long before the order, ordering it paid, had ever been entered. And she appeared to understand that, and she told me, well, I will have to speak to the financial litigation unit, and, you know, it's been a month and that hasn't happened, and I understand that things move slowly. But one of the things she said to me was that, you know, with the government, things don't always get to where they need to get. So when you have a judgment that doesn't reflect the reality of the situation, you have judges who retire or die, attorneys who retire or die, you have court reporters who destroy their notes. It was ridiculous for the court to enter that order when it was clear that Wells Fargo had the money, plus under the statute, Wells Fargo is completely protected in the unlikely event. If we get rid of the restitution provision, and your client wins her claim against Wells Fargo, Wells Fargo is out the money it got already and does not have any restitution provision in this judgment, is that the result you want? No, that's not correct, Your Honor. If you look in our reply brief, I address that argument specifically where the government made a similar argument under the restitution statute, parties have 60 days if they discover new losses to present them to the district court and establish their entitlement to victim restitution. They have to show good cause. So within 60 days of Ms. Glass winning her claim, which you won't give up, and I understand why, you're not authorized to give up, and within 60 days of giving up that claim, the bank can seek restitution again. Is that what you want? That is what I want. That's how the statute is supposed to function, Your Honor. And in terms of the reality of whether there is a loss, undisputed Wells Fargo had the money, and in terms of even if we consider that the government is entitled to discharge its burden of showing a loss or a potential loss by talking about this litigation that Ms. Glass was engaging in, you know, tilting at windmills and cursing the universe doesn't cut it. What was going on in bankruptcy court was that her attempt to overturn that automatic stay was out the door, and the bankruptcy case itself had been dismissed with an 180-day bar against refiling. There was just no legitimate reason to think that that money was at, that was in Wells Fargo's accounts, was at risk. And even if some miracle happened and Ms. Glass got it back, the bank is totally protected and can go back for a future restitution order. Counsel, rather than say the bank can go back if that happens, why couldn't we just direct the court to modify its order saying that if that, that if it happened that there were no more claims against the funds so the bank's recovery of them was final, that the restitution award would be reduced to that extent? Well, I think that is a vaguer alternative outcome than just ordering, asking the government counsel whether he's willing to order the judgment to be declared satisfied. From the position of the government in this case, as reflected in the argument I just read, it seems to contemplate a never-ending risk that Ms. Glass will say whatever she's going to say and the impossibility of ever declaring this order satisfied that was satisfied even before it was entered. I will move on to my other issues, Your Honor. The sentencing issue, Your Honor's decision in the McCormick case. As I said in the reply brief, I do believe this Court has the power to depart from McCormick. I explained at great length in the opening brief why I think McCormick was not correctly decided. I think one of the more persuasive reasons as a practical matter that I'm convinced of that is that the government hasn't bothered to defend the decision. I know that the government rests its case on binding precedent, but I'm used to government attorneys coming to court and saying, we have an ironclad case on forfeiture. But if you disagree, we have an ironclad case on the merits. And let me explain why. If you disagree, we have an ironclad case on no prejudice. Well, probably the government will give you a rejoinder if you file a petition for rehearing and bank and argue it's invalid. Maybe then they'll agree with you, say the en banc court should change it, or maybe they'll disagree and defend it. But, you know, it's not related to, I think, my prior involvement in that case. But just as a general matter, doesn't our panel have to follow that case and let you seek rehearing in bank? You know, unless the three of us were persuaded that you're right and McCormick was wrong and that we should ask for, the panel should ask for en banc rehearing, I guess we have the power to do that. But absent en banc rehearing, doesn't McCormick just stand? Well, that is typically the position that this court takes with prior panel decisions. As I say in the reply brief, I do think that the federal rules of appellate procedure, the language in the rule does appear to contemplate the possibility and the power of divergence within a circuit at the panel level and the availability of en banc review to resolve that. Whether it can be done so intentionally or simply has to occur accidentally is a little less clear. I know that higher courts typically benefit from the input of lower courts, so to my mind it makes sense for this court to reach all the arguments as to why McCormick was incorrectly decided, why there is no ambiguity in the guideline, why there's a clear difference between exclusions and credits and how they apply, and why whether the loss that Ms. Glass caused, whether it was intended or reasonably foreseeable, you still have to apply the credit for the full amount of the money that Wells Fargo received in calculating the appropriate offense level. I think the court understands the issue, so I will move on to the competency arguments. The Edwards and Ferguson arguments that Ms. Glass never should have been allowed to represent herself because she was not mentally competent to undertake the tasks at hand. I almost wish we didn't have the Ferguson case, because I think the district court's concern from the get-go with Ms. Glass's irrationality, hostility, disheveled appearance, grandiosity, irrationality I think he says several times, suggests that if this court was reviewing the matter in a case tried post-Edwards or looking at it in a matter where competency to stand trial was at issue, the court would have to say, what happened here? There should have been serious doubts. Nobody dealt with it. Automatic reversal. But we have Ferguson case, which was drawn from the Ammaline case, which dealt with how to deal with things in the wake of the Booker decision. And maybe the remand in this issue is not quite as automatic as Ammaline, but I submit it's probably pretty close. And one principle that came out of the Ammaline case, and I know Your Honors were involved in that, was caution against reading too much into what a district court judge says or doesn't say when he's operating under a different standard that governs the issue. And in Ammaline, obviously, the issue was advisory versus mandatory. Here the issue is what standard is the district court looking at when he's addressing it? The district court said quite clearly he was absolutely convinced that Glass was capable of defending herself. That's the word and language he used. The district court did the same thing the district court judge in Ferguson did, was look at all the unreasonable behavior that the defendant was engaging in and think that the prospect of this person representing himself was going to be a complete disaster. And if you review all the allegations that Ms. Glass was making against her own attorney, against the judge, against the marshals, against the bailiffs, against government counsel, et cetera, et cetera, et cetera, the district court was convinced that Ms. Glass was angry and irrational and hostile and that she was not focusing on the task at hand. And the case for the limited remand that Ferguson mandates in these issues is far stronger than Ferguson's case. Ferguson was not making these scattershot arguments. He was making a bad jailhouse lawyer argument that he was maybe pathologically convinced of, but still the court looked at what he was doing and said, if the district court had the benefit of Edwards, maybe we have a different result. And we had in Ferguson, we had the psychiatrist who had examined Ferguson saying, this guy's malingering, he's faking, there's nothing going on here. Whereas we have Dr. Schwang who came in at the start of the trial or on the second day of the trial, he'd been seeing her for three years, three years. He'd been diagnosed to her as depressive, psychotic, possibly paranoid, and she was on a battery of medication that he was taking pains to adjust from time to time. He was also of the opinion she could defend herself. At that point he was of the opinion that she could defend herself with the benefit of continued treatment and allowing her mental state to stabilize. I think if you had looked at what the district court would have done at the very get-go, if he had the benefit of Edwards, he might have ordered a competency referral because he was very concerned about the way Ms. Glass was acting, but he was not going to say that she was not competent to stand trial, which is a tougher standard. Ms. Glass didn't say that she was not competent to stand trial. The whole issue is now under Ferguson and Edwards, was she competent despite really wanting to represent herself to be able to carry out the duties of self-representation? And it seems clear to me that if with the benefit of Edwards, the district court might have from the get-go found Dr. Schwang and said that there is a huge doubt here about this person's ability to represent herself, I don't want her to represent herself and I'm not going to do it. And under Ferguson, that's reversal. You're running out of time, but we'll give you a minute for Root Bubble. Mr. Keenan. Your Honors, good morning. Rob Keenan for the United States, and may it please the Court. I'd like to focus a good chunk of my time on the Sixth Amendment claim just to address some issues raised in the reply brief. The first issue that the defense argues about is what the appropriate standard of review is. On which issue are you arguing, of the three? The Sixth Amendment claim right to counsel, issue number one. As to that, it's the government's position that affirmance is proper, affirmance of the convictions is proper, and rejection of the Sixth Amendment claim is proper, regardless of what standard of review is applied, de novo, abuse of discretion, what have you. Nonetheless, we do think some clarity perhaps is warranted as to what the appropriate standard of review is, and as to this issue, an Edwards-based argument. And we do disagree with the defense position that a de novo review is appropriate. The defense tries to argue that de novo review is appropriate because this Edwards-based argument is akin to And those are entirely separate issues. The Edwards argument, you don't even get to an Edwards issue until you first determine that the defendant is competent to stand trial and thus competent to waive counsel, and has elected to do so and made a clear unequivocal statement to the effect that she wants to waive counsel. At that point, then Edwards has a different, a new layer that's been added to the analysis where the district court or the trial court in the State has the discretion now under Edwards clearly to deny a request of self-representation. But those are two separate questions. You don't even get to the Based upon a different standard than competency to stand trial. Right. So, in other words, competency to represent oneself. Right. More difficult than the first one. Well, it's – Edwards does involve a heightened standard of competency where the court is looking, has now has the discretion clearly, had it before as the district court recognized. But Edwards makes clear that it had the discretion to deny a defendant's request of self-representation. But discretionary review, I think, is appropriate because an abuse of discretion standard is because Edwards and Ferguson both make clear this is an issue submitted to the discretion of the trial court. They're in the best position to evaluate this. And in the phrasing of the holding in Edwards, it makes clear it's something that the trial court may do. It's permitted to do under the Constitution to deny the right of self-representation for a so-called gray area defendant. What are the factors that the district court should consider when making that discretionary determination? First and foremost, you must have evidence in the record to establish that the gray area defendant is in the gray area, specifically that the defendant has a severe mental illness. In the absence of that, you don't even get into an Edwards inquiry without committing error, it seems to me. The district court has no legitimate authority to deny a request for self-representation unless there's clear evidence in the record establishing a severe mental illness. In Edwards, for example, the defendant there had a diagnosis of several years of schizophrenia, severe. Must it be severe mental illness? Suppose the defendant doesn't speak English. It must be a severe mental illness. Edwards phrases it, it's holding in that way. I think Ferguson and the other two courts we cite to Barry and DeShazer out-of-circuit cases indicate that that's, I think it's Barry that says that's an essential precondition of any Edwards-based denial of the right to counsel. Does the district court, you say, okay, there's a severe mental illness and this person seems to understand what the trial process is all about, but if I let this guy go, this is really going to be a mess and it's going to take a long time. So does that enter into it, the fact that it may make the trial process more difficult? That wouldn't be enough. It would have to be a mental illness, sort of summarizing Edwards, it would have to be a severe mental illness that was severe enough to raise serious questions about whether the defendant was able to represent himself or herself in this case in a way that focused on the relevant issues and had basic capacity to make written and verbal arguments that were focused on the relevant issues. So those would be the two essential preconditions, I think. But the Erskine rationale in the reply brief the defendant sends to Erskine saying to explain why de novo review is appropriate, it really isn't applicable. That talks about the difficulties of a defendant at a Ferretti hearing explaining to the district court why the waiver colloquy isn't quite up to snuff and how that's unfair to sort of put that burden on a defendant at a Ferretti hearing. We don't have that issue here. The Ferretti hearing is the required colloquy is conducted. There's no issue as to that on this record. And the next question that the court clearly and expressly evaluated was this balancing test as to whether or not the defendant had a mental illness that was of a type that would raise serious questions about ultimately a due process issue, about whether the resulting trial was fair. At the time of the other point raised in the reply brief I want to respond to, the defendant suggests that Edwards actually imposes an obligation on the district court. It does not. It is a permissive. I take the Supreme Court at its word. It phrased it in a permissive way. It is something that trial courts are permitted to do in instances where they have a record of a gray area defendant of the type I just described. It was not required on this record to deny Ms. Glass's clear and unequivocal request to represent herself. In fact, on this record I would submit that it would have been error to deny Ms. Glass's right to representation, self-representation on this record. The defendant told the district court at the time of the three Ferretti hearings, there were three Ferretti hearings held in this case. The courts, in contrast to the last one we heard a moment ago, took Ferretti seriously, conducted three full Ferretti colloquies to make sure that the defendant was making an unequivocal request and it was known involuntarily made before granting the defendant ultimately the right to proceed as her own counsel. The defendant was asked, do you have any problems? Are you treating with a psychiatrist? Are you taking any psychiatric medication, et cetera? She specifically told the district court at the first hearing, the first Ferretti hearing, and we cite to that in our papers, that she was not, that no, Your Honor, was the answer, that she was not under any psychiatric care and not taking any psychiatric medication. Moreover, the district court asked the defense counsel who had the best, you know, sort of a front row seat as to whether or not the defendant is in a position to represent herself effectively if she were to be permitted to proceed without counsel. And as to that, the defense counsel, her first defense counsel said that they weren't inclined to make any such motion. The court asked me. I wasn't inclined to make any such motion based on my own observations of Ms. Glass. And moreover, the court found no independent basis for it to move Sua Sponte for a psychiatric evaluation. So at the time of the Ferretti rights being granted, several months before trial, there was simply no evidence of a severe mental illness that would have created grave doubts, as the defendant phrases it, as to the end result. Now, Mr. Lubliner, if the district court judge has a situation patent before him that the self-representation will have disastrous results, shouldn't that be sufficient under Edwards to invoke his discretion? No, Your Honor. First of all, the record at the time the Ferretti rights were granted, simply the district court made some comments indicating it was concerned about what it perceived conduct that it said could or may be described as irrational. And as I pointed out in our answering brief, you know, there's another perception of the defendant's conduct during that initial hearing, and that was she was angry. She had been thrown in custody on a summary contempt finding that this court ultimately, about 60 days later, reversed. Was there any factual evidence before the district court that it would be disastrous for her to represent herself, such as any evidence that she would stonewall any participation in trial and simply seek delays and not participate? No, there was no such evidence in the record at all. I didn't think so. And Dr. Chuang, at the time of the trial, the defendant puts a lot of weight on Dr. Chuang's testimony. He contradicted the defendant's claim. On the second day of trial when Ms. Glass showed up and announced for the first time that she had this medical condition and her recent change in medication rendered her incapable of proceeding, the district court did exactly what it should do. It listened to – it told the defendant, I'm willing to listen to what Dr. Chuang says, but he needs to be in court and I want to hear his testimony. And he did so. There was a lengthy hearing where Dr. Chuang testified. And he made clear – he completely contradicted the defendant's claims, the claims that she made on the first day of trial. He made clear that he never told her to not participate in the trial or to forego cross-examining witnesses. He also denied advising her not to proceed with the trial. Those were representations that were entirely at odds with what Ms. Glass told to the district judge in this case on the morning of trial, moments before the jury was to be summoned. And lastly, Dr. Chuang testified that he was not of the opinion that Ms. Glass, at that time, lacked an understanding of what was going on in court or that she could not function as her own counsel. So there's just nothing in this record, even with her psychiatrist's testimony, nothing in this record to suggest she has any kind of a severe mental illness of the type. Counsel, it's Judge Gould with a question. At some point, could you please address the sentencing issue on intended loss, the McCormick issue? You know, the appellate takes a pretty strong argument that that precedent's error and says the government hasn't responded on the merits. So should our panel ask for the court and bank to assess it, or do you think it's correct? McCormick is correct, and there's no reason to revisit it. McCormick stands for a very limited proposition that when evaluating intended loss, pledged collateral, collateral that's pledged as security for a loan, a fraudulent loan in this case, is a factor that should be considered. The defendant suggests that it bars consideration of that. McCormick doesn't block all consideration of pledged collateral as relevant to the issue of intended loss. More importantly, just a few bullet points on this. McCormick's construction of the rule was not unreasonable for the following reasons. First of all, it was consistent with cases applying the earlier application notes, the 2B1, actually the 2F1.1, the earlier fraud guideline. Another point, as the defendant notes, those application notes were changed. 2F1.1 was thrown to the wind, and it was consolidated with the theft guideline, 2B1.1, so all the fraud issues would be resolved. There's nothing in the legislative record, the amendments to the sentencing guidelines, specifically 2B1.1, that I have been able to find that suggests any intent by the Sentencing Commission to change how the courts have been addressing this issue, about whether pledged security should reduce loss calculations for the purpose of it. There is one question that gets away from the technical aspects of the sentencing guidelines, and it has to do with this. Here's a woman who attempted to bilk two banks. She did not bilk two banks. The banks have not suffered a dollar's worth of damage. She is doing 78 months in jail for unsuccessful bank fraud. In California, we would call it attempted bank fraud, and we'd give her a 50 percent discount because attempted crimes are sentenced in half, the completed crimes. Is this a reasonable sentence under Booker? Yes. Why? It's reasonable for a number of reasons. The facts in this case, and the reason it gets to the issue about why collateral pledged security for a loan shouldn't reduce automatically in all cases intended loss. This is a case where the defendant had every intention of keeping the money. She made that clear even through the very last end of the sentencing hearing. She made no effort to repay the loan. She continued to maintain that she was not obligated to repay any of the money to Wells Fargo Bank. But more importantly, just in the way this particular fraud scheme was orchestrated, it presented her with an opportunity to simply deny, to claim that she was a bona fide victim, an innocent third party whose property was used by some ne'er-do-well as security for a fraudulent loan without her knowledge. And it creates a circumstance where the defendant could have simply walked away if she had made that argument. Ultimately, she wound up, I think, preferring the argument that the bank, due to a bookkeeping error, produced evidence that the loan had been fully repaid. But it presented a circumstance where she was able to continue for, I think it was about a two or three year period, stalling foreclosure proceedings and presenting a record where she would have been able to argue in civil litigation or bankruptcy litigation that she was not obligated to repay any of the money and that the lien that the bank held as a result of, based on that fraudulent loan, should have been extinguished altogether because she was not a party to obtaining that loan fraudulently. That this third party, unbeknownst to her, Megan Clevenger, was the one who really did it. She's the real criminal. So we have a very sophisticated defendant who orchestrated, as Judge Carter described it, a sophisticated scheme that substantially obscured her involvement in obtaining the loan. It took a great deal of effort to investigate who was actually behind the fraud scheme. And so we have a defendant who has no regard. It's not just the fraud case, I think it's important to note. She demonstrated no regard for the court's rules of procedure in the civil case, the civil action designed to forestall the foreclosure proceedings. Why do we want to put people in jail for that? Well, I think the main point there is not in isolation, perhaps, but this is a scheme that lasted for several months that involved several false statements under penalty of perjury, the first in the civil case before Judge Taylor, in one of the bankruptcy cases. So your position is the sophistication of the scheme shows the blackness of heart of the defendant, and regardless of whether it cost the banks any money, she had to do the upper range of the guidelines, 78 months. That's correct. And ultimately, as this Court noted in the United States v. Muhammad, reasonableness is not a point, it's a range. And we think that's a proper sentence. Also, in light of the conduct that continued during the course of the criminal case, there were several acts of obstruction of justice that could have warranted an upward departure, in fact. But it's just a continuing scheme of misconduct, and I think that the sentence imposed is reasonable as a result. I totally love your time. Thank you. Mr. LeBlanc, do you have a minute? I'll try to do it in just a minute. We'll try to help you do it in just a moment. Oh, good. Thank you, Your Honor. Working backward again, I note the government did not make any offers or concessions on the restitution matter. On the sentencing point, responding to the Court's question about substantive reasonableness, regardless of the offense level, that was not the position that the government or the district court took at trial. While they were very concerned when this potential reconveyance came up to explore whether it was legitimate or not, because the calculation of the loss to the bank, everyone agreed, made a huge difference into the sentence that was going to be imposed. On his attempt to defend McCormick, it sort of sounds like the limited defense he made in his answering brief in that it essentially borrows language and reasoning from the cases from the 1990s, construing the prior guideline where collateral was linked to the definition of actual loss, was not linked to the definition of intended loss, whereas under the plain language of the new guideline. Counsel, do you have any case from the Ninth Circuit, as opposed to your argument based on FRAP, where we've said a panel can say we don't like a prior panel opinion, we think it's wrong, we're not going to follow it, you know, let a thousand flowers or at least two flowers bloom. Is there any case where we have said that a panel can do that? Because I'm not aware of that, nor am I aware of it within the sort of informal culture of the court, you know, as opposed to a panel saying it should be heard in bank. No, Your Honor, I wish I were. I think the general language that one sees is that if there's an intervening U.S. Supreme Court case, that will moot the prior panel decision if it's clearly on point. But I wish I had a case that you're talking about, but I don't. I do want to talk some more about, briefly, Mr. Keenan's comments on the competency issue. He doesn't come quite out and say it explicitly, but it sounds like he's saying that a defendant has no standing to complain about what the district court does in prerogative proceedings about the issue of competency to represent oneself. And I submit that this Court has already, in Ferguson, explicitly or impliedly, either as a matter of constitutional law or as a matter of supervisory authority over the district courts, decided that defendants do have standing to complain about being allowed to represent themselves when they are incompetent to do so. Otherwise, the remand would make no sense, because it would be an academic exercise about what the district court might have done, and we really don't care about that unless it has personal consequences to the defendant. There are other cases. There's a Connecticut Supreme Court case where they took the supervisory authority view. There is Florida Rules of Criminal Procedure, I believe, at the district court level, where they have now engrafted that on as a matter of procedure. And at some point, we're going to get beyond Ferguson, and cases post-Edwards are going to start coming to this Court, where there is a Feretta inquiry and there is a questionable client like Ms. Glass or Ms. Ferguson, and the district court either addresses the issue or doesn't address the issue, and the defendant is going to say, wait a minute, I was totally impaired. I really wanted to represent myself, but I probably shouldn't have been allowed to do it, and this Court is going to have to apply an appropriate standard of review, which is either going to be something akin to what we do in competency cases, or it's going to be something akin to the adequacy of a Feretta waiver. I think both of them are essentially mixed questions of fact and law, the remedy for which the violation is automatic reversal. Counsel, you've exceeded your time. Thank you very much. Thank you, Your Honor. This matter will stand submitted, and the Court will take a recess of 15 minutes. Thank you.
judges: Gould, Bea, Molloy